United States District Court
Southern District of Texas

**ENTERED**

December 23, 2015

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

## GALVESTON DIVISION

| | | |
|---|---|---|
| KIRSTIN WALKER, Individually and as<br>Next Friend for LW, a Minor | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. G-15-064 |
| REGENCE BLUE CROSS BLUE<br>SHIELD OF OREGON, BLUE CROSS<br>BLUE SHIELD OF TEXAS, a Division<br>of Health Care Service Corp., and<br>HEALTH CARE SERVICE CORP., | § § § § § § | |
| Defendants. | § § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendants' Second Motion to Dismiss. (Dkt. No. 21). Defendant Regence Blue Cross Blue Shield of Oregon (RBCBSO) seeks dismissal of the action against it based on lack of personal jurisdiction and all the Defendants seek dismissal under Rule 12(b)(6).

## I. BACKGROUND

This lawsuit arises out of a dispute over the payment of claims for medical expenses submitted under a health care plan. Plaintiffs Kirstin Walker (Walker) and her minor son, LW., are insured under a health care plan that Walker obtained through her employer, Banfield Pet Hospital (Banfield).[1] Plaintiffs allege that Defendants refused, in whole or in part, to pay for

---

[1] Banfield Pet Hospital, an Oregon-based company, operates veterinary clinics throughout the country that are typically located inside PetSmart stores. (*See* Dkt. No. 19, Ex 1).

1

medical expenses for LW's air ambulance transportation and for mental health care. (Dkt. No. 13). Walker responded by contacting the media which she alleges prompted Defendants to assure Walker that they would dedicate an employee to oversee her claims so that future difficulties in the claims handling process could be avoided. Despite the assurances, Walker asserts that no such action was ever taken by Defendants.

Plaintiffs brought suit in state court against the named Defendants and sought to recover the payment of the unpaid medical expenses, along with other damages. Plaintiffs initially allege that Defendants, acting as a principal and/or agents, committed numerous violations of the Texas Insurance Code and the Texas Deceptive Trade Practice Act. (Dkt. No. 13 at 7-13, 14-15). Plaintiffs also assert other state law claims against Defendants which include breach of contract, breach of the duty of good faith and fair dealing, civil conspiracy and fraud. (*Id.* at 6, 13-14). However, acknowledging that their health care plan might be governed by ERISA, Plaintiffs allege in the alternative that they are entitled to payment of benefits under the ERISA statute because Defendants have knowingly and intentionally delayed and/or refused to pay their medical bills (Dkt. No. 13 at 19-24). In addition, Plaintiffs allege that Defendants, who acted in a non-fiduciary capacity, are also liable for intentional infliction of emotional distress. (*Id.* at 24-25).

Defendants removed the action to federal court[2] and then pursued dismissal. In their Second Motion to Dismiss, which is accompanied by a declaration from an in-house counsel,[3] Defendants maintain that RBCBSO should be dismissed for lack of personal jurisdiction. (Dkt.

---

[2] The action was removed by Defendants based on two grounds – federal question and diversity jurisdiction. Plaintiffs initially filed a motion seeking remand, however, a review of the docket reflects that the parties came to some sort of an agreement that rendered any such motion moot.

[3] *See* Dkt. No. 21, Ex. 2 (Second Declaration of Dana S. Scheele).

2

No. 21). Defendants also maintain that the entire action should be dismissed because Plaintiffs have failed to state a claim upon which relief can be granted. (*Id.*). The parties filed their respective responses and the Defendants' Motion is now ripe for adjudication.[4]

## II. DISCUSSION

### A. Defendant RBCBSO's Rule 12(b)(2) Motion to Dismiss

Defendant RBCBSO seeks dismissal for lack of personal jurisdiction. (Dkt. No. 21). Absent a federal statute that provides more expansive personal jurisdiction, a federal court sitting in diversity may only exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum state confers personal jurisdiction over that defendant and the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir.2006). The Texas long-arm statute confers jurisdiction to the limits of due process. TEX. CIV. PRAC. & REM.CODE ANN. § 17.041–.045; *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir.2008); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir.2003). Due process permits the exercise of personal jurisdiction over a nonresident defendant when the defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir.2008).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Johnston*, 523 F.3d at 609

---

[4] It appears that Defendants have brought their Second Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 21 at 3). Notably, a motion to dismiss based on lack of personal jurisdiction is brought under Rule 12(b)(2) and is analyzed under different standards than a Rule 12(b)(6) motion. Wright & Miller, 5B FED. PRAC. & PROC. CIV., § 1351 (3d ed. 2015).

3

(quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5ᵗʰ Cir.2001). General jurisdiction applies when the nonresident defendant's contacts with the forum state are "continuous and systematic," but unrelated to the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984); *Stroman Realty*, 528 F.3d at 385. In contrast, specific jurisdiction applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5ᵗʰ Cir.2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also, Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5ᵗʰ Cir.2004) (quoting *Burger King*, 471 U.S. at 474) (explaining that "[t]he focus [of this inquiry] is on the relationship between the defendant, the forum, and the litigation").

The party asserting jurisdiction[5] bears the burden to establish a basis for the court's exercise of personal jurisdiction over a nonresident defendant. *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545-46 (5ᵗʰ Cir.1985); *see generally*, Wright & Miller, 5B FED. PRAC. & PROC. CIV. § 1351. That burden is met by a *prima facie* showing of personal jurisdiction. *D.J. Investments*, 754 F.2d at 545-46. Proof by a preponderance of the evidence is not required. *Id.* The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Revell v. Lidov*, 317 F.3d 467, 469 (5ᵗʰ Cir. 2002). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved

---

[5] Plaintiffs assert that the Court has personal jurisdiction over RBCBSO based on both general and specific personal jurisdiction.

4

in the plaintiff's favor." *Johnston*, 523 F.3d at 609; *see also, Ainsworth v. Moffett Engineering, Ltd.*, 716 F.3d 174, 176 (5th Cir.2013).

## 1. General Jurisdiction

Having reviewed the record, RBCBSO does not appear to have the kind of substantial, continuous and systematic contacts with Texas sufficient to support an exercise of general jurisdiction in this case. *See Daimler AG v. Bauman*, _U.S._, 134 S.Ct. 746, 755-58, 187 L.Ed.2d 624 (2014); *Helicopteros*, 466 U.S. at 416; *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 217-218 (5th Cir.2000). There is no dispute that RBCBSO is located in Oregon; that RBCBSO does not maintain any registered agents, employees, or offices in Texas; that RBCBSO does not solicit business in Texas or from Texas-based employers; and that RBCBSO does not own any property in Texas.[6] *See Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir.2001) (citing 16 James Wm. Moore Et Al., MOORE'S FEDERAL PRACTICE ¶ 108.41[3] (3d ed.1999)) (recognizing that general jurisdiction's "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum"). While Plaintiffs allege that RBCBSO received some input on their claims from Blue Cross Blue Shield of Texas (BCBST) and Health Care Service Corporation (HCSC),[7] this fact, standing alone, is insufficient to establish general personal jurisdiction. *Cf. Wilson v. Belin*, 20 F.3d 644, 649-51 (5th Cir.1994) (determining that the court lacked general personal jurisdiction over the defendant despite the fact that defendant had a relationship with a Texas law firm and engaged in various professional and pro bono projects in the State over a period of several years).

---

[6] *Supra* note 3.

[7] BCBST is a division of HCSC.

5

The Court, therefore, concludes that RBCBSO's contacts or activities in Texas are clearly not substantial enough to justify subjecting it to suit in the Southern District of Texas based on a theory of general personal jurisdiction.

### 2. Specific Jurisdiction

Specific jurisdiction, however, appears to be another matter. Taking the uncontroverted allegations in Plaintiffs' complaint as true and resolving any conflicts between the facts contained in the parties' affidavits in Plaintiffs' favor, Plaintiffs have made a *prima facie* showing that RBCBSO has contacts with Texas related to the transaction and events giving rise to the causes of action that are sufficient to support specific jurisdiction. *See Johnston*, 523 F.3d at 609. In particular, the record reflects the following: (1) RBCBSO, while located in Oregon, is a large company that provides health insurance plans to employers; (2) Banfield operates veterinary clinics nationwide, including Texas;[8] (3) RBCBSO entered into an arrangement with Banfield to make health insurance coverage available to its employees;[9] (4) Walker is employed by Banfield in Texas; (5) Walker elected to obtain health insurance coverage for herself and her minor child, L.W.; (6) Walker and her minor child L.W. are "beneficiaries under the health insurance policy

---

[8] *Supra* note 1.

[9] Although RBCBSO has self-described its agreement with Banfield as a multiple employer arrangement (MEWA), it is unclear if falls within the definition. A "multiple employer welfare arrangement" is defined as "an employee welfare benefit plan, *or any other arrangement* (other than an employee welfare benefit plan) which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) [welfare plan benefits] to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries . . ." [Emphasis added]. 29 U.S.C. §1002(40)(A); *see generally*, http://www.dol.gov/ebsa/Publications/mewas.html (noting that prior to 1983, it was widely accepted that MEWAs constituted an employee benefit plan covered by ERISA and, thus, exempt from State insurance regulation under ERISA's broad preemption provisions. Recognizing, however, that it was both appropriate and necessary for States to be able to establish, apply and enforce State insurance laws with respect to MEWAs, Congress amended ERISA in 1983 to provide an exception to ERISA's broad preemption provisions for the regulation of MEWAs under State insurance laws).

6

issued by [RBCBSO]"; (7) Walker and her minor child, who both reside in Texas, received medical care in Texas; (8) while insured under the plan, claims for their medical care were submitted to RBCBSO for review and payment under the plan;[10] (9) RBCBSO, with input from BCBST and HCSC, reviewed the health insurance claims submitted; (10) following its review, RBCBSO "paid some, but not all," of the medical bills for their treatment/care; (11) the medical bills were left either underpaid or unpaid including air ambulance charges for L.W. and her mental health treatment; (12) Walker contacted RBCBSO by both telephone and mail regarding the underpaid or unpaid medical expenses, but to no avail; and, (13) after Walker contacted the local (Texas) media, RBCBSO represented that it would provide dedicated assistance to her so as to avoid similar issues in the handling of the Walkers' health insurance claims in the future, but no action was taken. (Dkt. No. 19, Ex. 1; Dkt. No. 22 at 4-6). Against this backdrop, RBCBSO's contacts with the forum state can hardly be considered to be the product of random, fortuitous contacts that might occur, for example, when an insured travels to another state and receives medical care.[11] Instead, based on the Plaintiffs' allegations, it would appear foreseeable that

[10] According to Defendants, approximately 178 claims for benefits have been submitted during the time period that Plaintiffs have been insureds under the plan.

[11] RBCBSO attempts to convince the Court that personal jurisdiction is lacking because this case is "remarkably similar" to *Memorial Hosp. Sys. v. Blue Cross Blue Shield of Arkansas*, 830 F.Supp. 968 (S.D.Tex. 1993), however, the Court is simply not persuaded of the alleged similarity. Significantly, unlike the present case, the only contact that the out-of-state insurer had with the forum state in *Memorial Hospital* was an unsolicited telephone call that was initiated by a Texas hospital to confirm coverage for an insured who required medical attention while in the state. *See, e.g., Perez v. Pan Am. Life Ins. Co.*, 96 F.3d 1442, 1996 WL 511748, at *2 (5th Cir. Aug.20, 1996) (a Guatemalan insurance company's authorization of the insured's treatment in Texas was insufficient to establish personal jurisdiction in Texas); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791-92 (Tex.2005) (out-of-state defendant's commission of a tort in response to a telephone call initiated from Texas did not establish the Texas court's personal jurisdiction); *Omega Hosp., L.L.C. v. Bd. of Trustees of the State of N.C. Teachers' and State Employees' Comprehensive Major Med. Plan*, No. 08-1575, 2008 WL 4286757, at *3-4 (E.D.La. Sept.16, 2008) (two telephone conversations initiated by a Louisiana hospital to confirm coverage were insufficient to establish personal jurisdiction over North Carolina insurers).

RBCBSO knew or should have known that a dispute over benefits could arise in Texas.  *See Nieves v. Houston Industries, Inc.*, 771 F.Supp. 159, 160 (M.D.La.1991).[12]

Because the Court finds that Plaintiffs have satisfied their *prima facie* burden, "the burden shifts to the [RBCBSO] to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271.  RBCBSO makes no such showing.

### 3.  National Contacts Standard

Although not discussed by the parties, the Court has personal jurisdiction over RBCBSO for another reason.  For claims arising under federal laws that authorize nationwide service of process, *e.g.*, ERISA, courts apply a national contacts standard.  *Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 825-26 (1996), *reh'g denied en banc*, 121 F.3d 706 (5th Cir. 1997).  Under the national contacts standard a federal court may exercise personal jurisdiction over a properly served defendant provided the defendant has minimum contacts with the United States.  *Id.*[13]  In this case, it is evident that RBCBSO is a resident of the United States, thus, the Court concludes that the exercise of personal jurisdiction is proper.  *Bellaire General Hosp.*, 97 F.3d at 825-26; *Memorial Hermann Hosp. System v. Southern Nat'l Life Ins. Co., Inc.*, No. H:10-0121, 2010 WL 1268064 (S.D.Tex. 2010) (J. Lake); *St. Luke's Episcopal Hosp.*

---

[12] To the extent that RBCBSO complains that Plaintiffs have not identified with specificity each claim involved and the contacts related to each for purposes of determining whether specific personal jurisdiction exists (Dkt. No. 21 at 5), the Court rejects any such argument.  It is clear from their pleadings that the claims Plaintiffs are challenging include those involving the air ambulance charges for L.W. and claims related to mental health care.

[13] As discussed by the Court in *Bellaire*, lower courts are bound to follow established Fifth Circuit authority.  *Bellaire General Hospital*, 97 F.3d at 825-26 (recognizing that it was bound by the holding in *Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1258 (5th Cir. 1994)); *see also, Luallen v. Higgs*, 277 Fed. Appx. 402, 404-05 (5th Cir.2008) (recognizing that it was bound to follow established authority); *Frost v. ReliOn, Inc.*, No. 3:06-CV-0822, 2007 WL 670550, at *2 (N.D.Tex. Mar.2, 2007) (same); *Center for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of Louisiana*, No. 11-806, 2014 WL 4930443 at n.7 (E.D. La. Sept. 30, 2014) (same).

8

*v. Lousiana Health Service & Index. Co.*, No. H-08-1870, 2009 WL 47125, at \*10 (S.D.Tex. Jan. 6, 2009) (J. Rosenthal); *see generally*, Wright & Miller, 4 FED. PRAC. & PROC. CIV., § 1068.1 (4th ed. 2015).[14]

For all of the reasons discussed, the Court concludes that Defendant RBCBSO's Motion to Dismiss for lack of personal jurisdiction must be DENIED.

B. Defendants' Rule 12(b)(6) Motion to Dismiss

Defendants have moved for the dismissal of Plaintiffs' action under Rule 12(b)(6). Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim if the claimant fails to set forth factual allegations in support of its claim that would entitle it to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007). Those "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir.2009) (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the non-moving party. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009). The court need not accept as true legal

---

[14] Notably, when the plaintiff has stated colorable claims under both federal and state law against a defendant that "derive from a common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), as is the case here, judicial economy suggests that the court hear the federal and state claims together. *Id.* at 1139.

9

conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

### 1. ERISA Preemption

Defendants contend that Plaintiffs' health care plan is governed by ERISA and, as such, Plaintiffs' state law claims are preempted by ERISA. (Dkt. No. 21 at 7-10). The Employment Retirement Income Security Act of 1974 (ERISA) subjects "employee benefit plans" to federal regulation. 29 U.S.C.S. § 1002, *et seq.*; *see generally, Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir.1990) (briefly discussing history and goals of federal statute). When an "employee benefit plan" is determined to be governed by ERISA,[15] which is normally a question of fact,[16] then state law, including all laws, decisions, rules, regulations, or other action having the effect of law, is preempted by ERISA if it "relates to" an ERISA plan. 29 U.S.C. § 1144(a); *see generally, Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (recognizing that because the ERISA statute was enacted to provide a uniform regulatory regime, the statute included an expansive preemption provision that is intended to create an exclusive federal remedy); *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (recognizing that ERISA's preemption clause is "conspicuous for its breadth"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46-48 (1987) (interpreting the words "relate to" expansively). Problematically, it is only *after* it is determined that an employee benefit plan is covered by ERISA that the broad preemptive power

---

[15] A three-pronged test is used to determine whether an employee benefit plan qualifies as an ERISA plan. *See Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437 439 (5th Cir. 2006) (the court considers whether: (1) a plan exists; (2) the plan falls within the safe-harbor provision established by the Department of Labor; and (3) the employer established or maintained the plan with the intent to benefit employees.

[16] *See House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007) (recognizing that only where the factual circumstances are undisputed can the court decide the issue as a matter of law); *Meredith v. Time Ins. Co.*, 980 F.2d 352, 353 (5th Cir. 1993) (recognizing that "whether a particular plan falls within the statutory definition is a question of fact").

of the Act take effect.

In the present case, Defendants insist that Plaintiffs' health care plan is governed by ERISA and, thus, Plaintiffs' state law claims are preempted. In support of their contentions, Defendants refer the Court to a declaration from Scheele that is attached, not to the pleadings or to this Motion, but to their Response to Plaintiffs' Motion to Remand. In deciding a Rule 12(b)(6) motion, a court is directed to consider only what is attached to the pleadings or to documents referred to in the pleadings. *Colle v. Brazos County, Texas*, 981 F.2d 237, 241 (5th Cir. 1993). The declaration upon which Defendants rely fits neither category. Although the "Booklet For: Banfield Pet Hospital Group Number: 10005735" (Dkt. No. 19, Appendix A), which is attached to Scheele's declaration, might properly be considered, Defendants do not ask the Court to rely upon the Booklet. Instead, it is the content of Scheele's declaration[17] that Defendants attempt to rely upon to establish that the plan is governed by ERISA. Insofar as this evidence is outside of the pleadings and in dispute, the Court declines to consider it. Nevertheless, even to the extent the Court could properly consider the evidence collectively contained in the declarations of Ms. Dana Scheele, the mere fact that a plan exists does not mean the plan is an ERISA plan (*MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 183 (5th Cir. 1992)), or that it was not subject to state laws. 29 U.S.C.S. § 1144(b)(6).[18]

---

[17] Scheele explains the relationships between Walker, her employer and RBCBSO.

[18] As discussed (*supra* note 9), Defendants have indicated that Plaintiffs' health care plan is a MEWA. A MEWA is covered by ERISA *if* it is also an employee welfare benefit plan (29 U.S.C. §1002(3)), which is normally a question of fact. *MDPhysicians & Assoc., Inc. v. State Bd of Ins.*, 957 F.2d 178, 182-83 (5th Cir. 1992). Additionally, determining whether the preemption provisions of ERISA precludes application of state law to an ERISA-covered MEWA is typically governed by the interplay of four clauses within ERISA: (i) the Preemption Clause; (ii) the Savings Clause; (iii) the Deemer Clause; and (iv) the MEWA Clause. *See* 29 U.S.C. §§ 1144(a), 1144(b)(2)(A)-(B), 1144(b)(6)(A).

11

Defendants insist, however, that Plaintiffs have admitted that their health care plan is subject to ERISA. Despite their insistence, Plaintiffs have made no judicial admission in their pleadings[19] that their health care coverage is an employee welfare benefit plan under ERISA. 29 U.S.C. §1002(1). Instead, the Plaintiffs have merely pled, in the alternative, that *if* their health care coverage constitutes an employee welfare benefit plan under ERISA, then they seek recovery under the ERISA statute. *Cf. Meyers v. Tex. Health Res.*, 3:09-CV1402-D, 2009 WL 3756323, at \*3 (N.D.Tex. Nov. 9, 2009) (a court can recognize that ERISA applies to the relevant plan without performing an in-depth analysis only when there is no genuine dispute regarding the applicability of the statute).

Not dissuaded, Defendants request the Court take judicial notice of the events surrounding Plaintiffs' Motion to Remand. In particular, Defendants explain that in response to Plaintiffs' Motion, they submitted undisputed evidence that an ERISA plan existed and Plaintiffs, rather than controverting the evidence, agreed to withdraw their motion. Defendants argue that Plaintiffs' actions constitute an acknowledgment that the plan is governed by ERISA. The Court cannot agree. There is no evidence before the Court as to the reason(s) that Plaintiffs withdrew their Motion to Remand. Nor is the Court prepared to leap to this conclusion given the fact that this case was removed from state court based on two independent grounds — diversity jurisdiction and federal question jurisdiction – and, as previously observed by Defendants, Plaintiffs did not even attempt to refute that the action was properly before the Court based on diversity jurisdiction. (*See* Dkt. No. 14; Dkt. No. 19 at 2-4). The Court, therefore, concludes that Defendants' motion to dismiss the state law claims based on preemption should be DENIED.

---

[19] *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) (assertions of fact in live, sworn pleadings, when not pled in the alternative, are considered judicial admissions).

12

## 2. Failure to State a Claim

Next, Defendants make a blanket argument that, even if not preempted, the Plaintiffs' state law claims against them are so "vaguely worded that Defendants are unable to determine exactly what relief is being sought." (Dkt. No. 21 at 10). The Court simply cannot agree. A plaintiff must only plead "a short and plain statement of the claim showing that the pleader is entitled to relief" FED. R. CIV. P. 8(a)(2). A review of the pleadings reveals that Plaintiffs are contesting the manner and/or amount (unpaid and/or underpaid) concerning their medical bills/claims. While it is true that Plaintiffs do not identify by date or claim number each of the health insurance claim they have contested, it is evident that the air ambulance charges for Plaintiff LW and charges for mental health care are, at least in part, the ones that Plaintiffs are disputing together with the representations they allege Defendants made concerning these charges. Accordingly, Defendants' motion to dismiss on this ground must be DENIED.

## 3. Failure to State Claim Under ERISA

Defendants also contend that Plaintiffs have failed to state a claim under their alternative claim for relief under ERISA. (Dkt. No. 21 at 11). Similar to their prior argument, Defendants insist that they have"absolutely no idea what Plaintiff alleges they did or failed to do, and how such action or inaction was in violation of the plan." (Dkt. No. 21 at 12-13).

The ERISA statute provides that "[a] civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As explained by the Supreme Court, "[t]his provision is relatively straightforward. If a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, [s]he can bring suit seeking provision of those benefits." *Aetna*

13

*Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). In order to state a claim under ERISA for allegedly underpaid on unpaid benefits, a plaintiff must show reimbursement for services provided to an ERISA beneficiary that were lower than those guaranteed under the provision of the governing plan. *See id.*

Having reviewed the pleading in this case, the Court is satisfied that Plaintiffs have pled sufficient facts, which if proven true, could plausibly demonstrate a § 502(a)(1)(B) claim. Plaintiffs have alleged facts that show they are participants or beneficiaries under the plan; that Defendants sufficiently controlled plan administration by making the claims determinations; and that Defendants either failed to pay or underpaid benefits for the air ambulance charges and mental health treatment in amounts lower than required under the governing plan. The Court, therefore, determines that Defendants' motion to dismiss Plaintiffs' ERISA claim, which is brought in the alternative, should be DENIED.

## CONCLUSION

Accordingly, for all the foregoing reasons, it is the ORDER of the Court that Defendant RBCBSO's Second Motion to Dismiss (Dkt. No. 21) under Rule 12(b)(2) based on lack of personal jurisdiction is DENIED;[20] and that Defendants BCBST and HCSC's Rule 12(b)(6) Motion to Dismiss is DENIED.

DONE at Galveston, Texas, this _____ 23ʳᵈ day of December, 2015.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE

---

[20] Plaintiffs' request for jurisdictional discovery, which is contained in their Response, is moot.

14