United States District Court
Southern District of Texas
**ENTERED**
November 14, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| KIRSTIN WALKER, Individually and as Next Friend for LW, a Minor | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. G-15-064 |
| REGENCE BLUE CROSS BLUE SHIELD OF OREGON, BLUE CROSS BLUE SHIELD OF TEXAS, a Division of Health Care Service Corp., and HEALTH CARE SERVICE CORP., | § § § § § § § | |
| Defendants. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendants Regence Blue Cross Blue Shield of Oregon (RBCBSO), Blue Cross Blue Shield of Texas, a Division of Health Care Service Corporation (BCBSTX), and Health Care Service Corporation, a Mutual Legal Reserve Company, (HCSC)'s Amended Motion for Partial Summary Judgment (Dkt. Nos. 34, 35),[1] to which Plaintiffs filed a Response (Dkt. No. 36), and then Defendants replied. (Dkt. No. 37). Having carefully considered the submissions of the parties, the Court issues this Opinion and Order in which it **GRANTS** Defendants' Motion for Partial Summary Judgment.

---

[1] Defendants' filed their initial Motion for Partial Summary Judgment on April 7, 2016 (Dkt. No. 30), but later filed this amended Motion.

1

## I. BACKGROUND

This lawsuit arises out of a dispute over the payment of claims for medical expenses submitted under a health care plan. Plaintiffs Kirstin Walker (Walker) and her minor son, L.W., are insured under a health care plan that Walker obtained through her employer, Banfield Pet Hospital (Banfield).[2] (Dkt. No. 13). Plaintiffs allege that Defendants refused, in whole or in part, to pay for medical expenses for LW's air ambulance transportation and for mental health care. (Dkt. No. 13). Walker responded by contacting the media which she alleges prompted Defendants to assure Walker that they would dedicate an employee to oversee her claims so that future difficulties in the claims handling process could be avoided. Despite the assurances, Walker asserts that no such action was ever taken by Defendants.

Plaintiffs brought suit in state court against the named Defendants and sought to recover the unpaid medical expenses, along with other damages. Plaintiffs initially allege that Defendants, acting as a principal and/or agents, committed numerous violations of the Texas Insurance Code and the Texas Deceptive Trade Practice Act. (Dkt. No. 13 at 7-13, 14-15). Plaintiffs also assert other state law claims against Defendants which include breach of contract, breach of the duty of good faith and fair dealing, civil conspiracy and fraud. (*Id.* at 6, 13-14). However, acknowledging that their health care plan might be governed by ERISA, Plaintiffs allege in the alternative that they are entitled to payment of benefits under the ERISA statute because Defendants have knowingly and intentionally delayed and/or refused to pay their medical bills (*Id.* at 19-24). In addition, Plaintiffs allege that Defendants, who acted in a non-fiduciary capacity,

---

[2] Banfield Pet Hospital, an Oregon-based company, operates veterinary clinics throughout the country that are typically located inside PetSmart stores. (Dkt. No. 34, Ex. 1 (Scheele Affidavit)).

2

are also liable for intentional infliction of emotional distress. (*Id.* at 24-25).

On July 8, 2016, Defendants collectively filed an Amended Motion for Partial Summary Judgment. (Dkt. Nos. 34, 35). The parties have submitted their responsive briefing (Dkt. Nos. 36, 37), thus, Defendants' Amended Motion is now ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

The Court analyzes Defendant's Motion under the well-established summary judgment standard. Fed. R. Civ. P. 56(c); *see generally*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

Defendants moves for partial summary judgment on the ground that the group plan qualifies as an ERISA plan which, therefore, results in the preemption under ERISA of all Plaintiffs' state law claims. (Dkt. No. 34). Plaintiffs counter that partial summary judgment is not warranted because a question of fact exists as to whether the plan is, in fact, an ERISA plan. (Dkt. No. 36). In addition, Plaintiffs raise issues relating to the effect of the Defendants' claimed MEWA status. The Court proceeds to address the issues in turn.

### A. ERISA Plan

ERISA applies to "any employee benefit plan if it is established or maintained (1) by an employer …; or (2) by an employee organization …; or (3) by both" an employer and an

3

employee organization. 29 U.S.C. § 1003(a).[3] ERISA defines an "employee welfare benefit plan" (EWBP) as "any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, ... for the purpose of providing its participants or their beneficiaries [with certain medical and health benefits] through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1).

To determine whether an ERISA plan exists a three-factor test is utilized. *See Peace v. Am. Gen. Life Ins. Co.*, 462 F.3d 437, 439 (5th Cir. 2006). Applying the "three-factor test," the court must determine whether "(1) the plan exists; (2) the plan falls within the safe-harbor provision established by the Department of Labor; and (3) the employer established or maintained the plan with the intent to benefit employees." *Id.*(citing *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993); *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 448 (5th Cir. 2007).

Ordinarily, the determination of whether an ERISA plan exists is a question of fact. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 353 (5th Cir. 1993) (recognizing that "whether a particular plan falls within the statutory definition is a question of fact"). However, when the facts are undisputed, the determination can be made as a matter of law. *See House*, 499 F.3d at 448 (recognizing that where the factual circumstances are undisputed the court can decide the issue as a matter of law). Defendants insist that this is such a case. The Court agrees.

Initially, there is no dispute in this case that the first and third factors have been met. In terms of the first factor, Defendants have offered ample proof of the existence of a plan. (Dkt.

---

[3] Two types of "employee benefits plans" exist: "Employee welfare benefit plans" and "employee pension benefit plans." 29 U.S.C. § 1002(3). In this action, the court concerns itself only with "employee welfare benefit plans."

No. 34, Ex. 1 (Fourth Decl. of Dana Scheele); Dkt. No. 35, Ex. 1 (Teresa Parent Depo.) at 46:9-15; *see also* Exs. 1-10). This evidence clearly reflects that Medical Management Inc. d/b/a Banfield purchased the group plan for the benefit of the employees and that the plan provides for how benefits are received. *McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir. 2000); *see Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir. 1990) ("from the surrounding circumstances a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits.").

Additionally, Defendants have offered evidence which satisfies the third factor of the test. (Dkt. Nos. 34, Ex. 3 (Parent Decl.); Dkt. No. 35, Ex. 1 (Parent Depo.) at 26:6-20 (self-billing); 47:18 - 48:17 (enrollment); 50:11-25 (controls eligibility)). Specifically, the evidence reflects that Banfield did more than merely purchase the plan; it demonstrates Banfield's level of involvement in establishing or maintaining the Plan for the intent of benefitting its employees. *See Peace*, 462 F.3d at 439 (a reasonable person could ascertain that a plan exists and that it was "established or maintained" by the employer with the intent to benefit its employees).

Thus, the only dispute in this case centers on the second element – namely, whether the Plan falls within the safe-harbor provision established by the Department of Labor. When a plan falls within the safe-harbor provision, it is exempt from ERISA. 29 C.F.R. §2510.3-1(j). In order to fall within the confines of the safe-harbor provision, all of the following four criteria must be met: (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan. *Id.*; *see also, House,* 499 F.3d at 449; *Meredith*, 980 F.2d at 355; *McNeil*, 205 F.3d at 190.

Having carefully considered all of the evidence in this case in a light most favorable to the Plaintiffs as the non-moving party, the Court finds that no reasonable trier of fact could conclude that the safe-harbor provision applied. Specifically, even though the plan would appear to be voluntary (Dkt. No. 35, Ex. 1 at 20:11-21; 52:1-13), there is no dispute that Banfield contributes to the plan by paying 90% of its associates' health plan premiums and contributes 100% to the short-term disability plan. (Dkt. No. 35, Ex. 1 at 20:22 - 21:3; 51:20 - 52:13; 54:5-9). In addition, there is no dispute that Banfield's role is not limited to merely collecting the premiums and remitting them to the insurer. On the contrary, the evidence demonstrates that Banfield handles the enrollment and eligibility of its associates, is actively involved in the plan in terms of self-billing and collecting premiums and reviewing claims on a weekly basis. (Dkt. No. 34, Ex. 1 (Fourth Decl. of Scheele) at ¶5; Dkt. No. 35, Ex. 1 at 26:16-20, 47:18 - 48:17). *Cf. Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir. 1991) (concluding that plan fell outside of the safe-harbor provision when the employer accepted claim forms from employees and submitted them to the insurer). Finally, although Plaintiffs attempt to point to language in the Contingent Premium and Retrospective Funding Arrangement and Premium Endorsements to argue that Banfield "might" or "could" profit from the plan (Dkt. No. 36), the undisputed evidence reflects that Banfield does not make a profit and it has received no compensation for providing the plan to its employees (Dkt. No. 35, Ex. 1 at 40:19-22, 54:21-23, 55:1-15, 61:1-3); rather, the evidence reflects that Defendant Regence has requested additional funding from Banfield to fund the Plan. (*Id.* at 60-61). However, even if the Court were to assume that the mere possibility of receiving a profit would suffice, it would do little to alter the outcome. In other words, absent all four criteria being met to bring the plan within the confines of the safe-harbor provision, it is not

exempt from ERISA. *See House*, 499 F.3d at 449 (explaining that all four criteria must be met to bring a plan under the safe-harbor provision); *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 236 (5th Cir. 1995) (the mere fact that the employer paid the insurance premiums disqualified the plan from falling into the safe harbor provision).

In conclusion, because no genuine issue of material fact exists as to any of the relevant factors utilized to make the determination, the Court has little difficulty determining, as a matter of law, that the plan in this case is an employee benefit plan governed by ERISA. The Court now proceeds to address preemption and the overlapping MEWA issue.

### B. ERISA Preemption

Defendants argue that since the health care plan is governed by ERISA, Plaintiffs' state law claims are completely preempted by ERISA and subject to dismissal. (Dkt. No. 34).

The Employment Retirement Income Security Act of 1974 (ERISA) subjects "employee benefit plans" to federal regulation. 29 U.S.C.S. § 1002, *et seq.*; *see generally*, *Memorial Hosp. Sys.*, 904 F.2d at 240 (briefly discussing history and goals of federal statute). Thus, when an "employee benefit plan" is determined to be governed by ERISA, then state law, including all laws, decisions, rules, regulations, or other action having the effect of law, is preempted by ERISA if it "relates to" an ERISA plan. 29 U.S.C. § 1144(a); *see generally*, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (recognizing that because the ERISA statute was enacted to provide a uniform regulatory regime, the statute included an expansive preemption provision that is intended to create an exclusive federal remedy); *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (recognizing that ERISA's preemption clause is "conspicuous for its breadth"); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46–48 (1987) (interpreting the words "relate to" expansively).

Although it is true that ERISA generally preempts state laws purporting to regulate an employee benefit plan covered under that Title, there are recognized exceptions to the general preemption provision. One such exception involves MEWAs. 29 U.S.C. §1144(b)(2)(A) & (B); (b)(6). Because Defendants maintain that this case involves a MEWA - a point which Plaintiffs appear to dispute in one breath and then urge in the next[4] – additional analysis is necessary.

### 1. Existence of a MEWA

As defined in section 3(40) of ERISA, a "multiple employer welfare arrangement," commonly referred to as a "MEWA," includes all arrangements - both employee welfare benefit plans, as well as arrangements "other than ... employee welfare benefit plan[s]" - that are "established or maintained for the purpose of offering or providing" certain benefits "to the employees of two or more employers ... or to their beneficiaries." 29 U.S.C. §1002(40)(A) (defining MEWA and listing exceptions irrelevant to this appeal). Only MEWAs that also constitute statutory employee welfare benefit plans are governed by and regulated under federal law-ERISA. 29 U.S.C. §1144(b)(6)(A).

While Plaintiffs offer no evidence to suggest the plan is not a MEWA, they insist that the evidence has not established a valid MEWA exists. (Dkt. No. 36, at 6-7). The Court simply cannot agree. (Dkt. No. 34, Ex. 1 at ¶¶5-6; Dkt. No. 35, Ex. 1 at 44-45). The evidence in this case clearly reflects that the arrangement did not involve groups of unrelated entities as suggested by Plaintiffs; rather, the arrangement involved related entities and operated for the benefit of

---

[4] Notably, given their briefing, Plaintiffs appear to be arguing diametrically opposed positions concerning the MEWA status. (Dkt. No. 36 at 6-9). In particular, Plaintiffs purport to argue that the summary judgment evidence does not establish a MEWA exists and then they proceed to argue that preemption of their state law claims is not warranted because the MEWA is not fully funded.

8

providing health and welfare benefits to the employees of two or more employers. (Dkt. No. 34, Ex. 1 at ¶5, Attach. No. 1 at "Regence" 004, 012, 027, 032; Dkt. No. 35, Ex. 1 at 13-17; Dkt. No. 36, Ex. B at 14-16). Furthermore, there is undisputed evidence that a prior investigation of the arrangement confirmed that the arrangement was a MEWA and, while there was a change in insurance carriers, the determination remained valid because the general structure of the MEWA remained unchanged. (Dkt. No. 35, Ex. 1, 3). Upon this record, the Court concludes that ample evidence exists upon which to find that the arrangement constituted a MEWA.

## 2. Limited Preemption

Proceeding on, if the MEWA is itself an ERISA plan – which, as discussed, this Court has found it to be -- then it would be subject to the provisions of ERISA governing employee welfare benefit plans and would also be subject to state insurance laws. 29 U.S.C. §1144(b)(6)(A). However, the nature and extent to which the MEWA would be subject to state insurance laws turns on whether or not the plan is fully insured.[5] Specifically, in the case of a MEWA that is itself an ERISA plan and is fully insured, state law may be applied, but only to the extent that it seeks to regulate the level of reserves and contributions. 29 U.S.C. §1144(b)(6)(A)(i). In contrast, in the case of a MEWA that is not fully insured, state law may be applied to the extent that it is not inconsistent with ERISA. 29 U.S.C. §1144(b)(6)(A)(ii).

In an effort to preserve their state law claims, Plaintiffs argue that the claimed MEWA is not fully insured. (Dkt. No. 36 at 7-8). Plaintiffs' arguments, which are based on misconstrued

---

[5] Section 514(b)(6)(D) provides that a MEWA is "fully insured" for this purpose "only if the terms of the arrangement provide for benefits the amount of all of which the Secretary determines are guaranteed under a contract, or policy of insurance issued by an insurance company, insurance service or insurance obligation, qualified to conduct business in a State." 29 U.S.C. §1144(b)(6)(D).

or strained interpretations of Parent's deposition testimony, have no merit. In this case, the undisputed evidence clearly reflects that the plan is one that is fully insured. (Dkt. No. 35, Ex. 1 at 10:7-14, 13:1-9, 18:22 - 19:22, 22:20-24, 23:21 - 24:14, 29:2-6, 30:1-4, 53:12-21, 55:3-5, 58-60). Accordingly, given that this case involves a MEWA that is fully insured, the application of state law would be limited to regulation of levels of reserves and contributions. 29 U.S.C. §1144(b)(6)(A)(i). Because the nature of Plaintiffs' state law claims fall outside these parameters, they are preempted by ERISA and, hence, must be dismissed.

## CONCLUSION

Accordingly, for all the foregoing reasons, it is the **ORDER** of the Court that Defendants' Motion for Partial Summary Judgment (Dkt. Nos. 34, 35) is **GRANTED**; and that Plaintiffs' state law claims, which are preempted by ERISA, are **DISMISSED** with prejudice.

**DONE** at Galveston, Texas, this ___14th___ day of November, 2016.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE