IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| KIRSTIN WALKER, Individually and as Next Friend for LW, a Minor | § § § | |
| V. | § | CIVIL ACTION NO. G-15-064 |
| REGENCE BLUE CROSS BLUE SHIELD OF OREGON, ET AL. | § § § § | |

## OPINION AND ORDER

On June 6, 2017, this action was tried to this Court by consent from Parties. Having now considered the evidence and the applicable law, the Court issues this Opinion and Order.

Kirstin Walker, individually and as next friend for L.W., her minor son, filed suit against, *inter alia*, Regence Blue Cross Blue Shield of Oregon (Regence) in an effort to recover benefits under her health benefit Plan.

The unembellished, undisputed background facts can be briefly stated. At all pertinent times Kirsten was an employee of Banfield Pet Hospital and a beneficiary of its health care plan with Regence, which covered her and her family. Kirsten's minor son was born with birth defects which caused the loss of his immune system. As a result, even any minor illness can prove life threatening to L.W. On the two occasions material to this litigation, L.W. was taken to Memorial Herman Hospital in Katy, Texas, which is close to Kirsten's residence. On each occasion the decision was made to "life flight" L.W. to

Memorial Herman Hospital in downtown Houston for the necessary emergency medical treatment he needed. Under the circumstances, Kirsten was, quite understandably, given no option to chose which air ambulance service provider would be utilized. The air ambulance charges were timely sent to Regence for payment. Regence's processing of those claims is the crux of this action's resolution.

**THE PLAN**

The "Plan" consists of two parts: the "contract" for Medical Management International, Inc. d/b/a Banfield Pet Hospital and the "booklet" for Banfield Pet Hospital. Certain Plan provisions are at play.

The Plan, after the deductible has been met, pays 80% of the "allowed amount" of the provider's charges and a beneficiary is responsible for the remaining 20% of that amount. The allowed amount of benefits paid under the Plan to a provider of services varies in accordance to the "category" status of the provider. Category 1 and 2 providers are those with a contract with Regence or another Blue Cross or Blue Shield organization (participating providers) that caps the payment amount and insulates a beneficiary from liability for any balance, except the beneficiary's 20% share of the allowed amount. Category 3 providers are ones without a covered contract (non-participating providers) and Regence pays them what the plan administrator determines is a reasonable amount for their services and the beneficiary is responsible for the balance due the provider plus her 20% share of the allowed amount.

All air ambulance services, when found necessary, are covered by the Plan and governed by the 80/20 split of the "allowed amount."

As to non-participating providers, the Plan includes an "Exceptions" paragraph which reads, in pertinent part, as follows:

> In some exceptions cases, We *may* pay claims from non-participating Providers . . . based on the Provider's billed charge, *such as in situations where a Member did not have reasonable access to a participating provider as determined by Us . . . In any of the exceptions situations, the Member may be responsible for the difference between the amount that the non-participating Provider bills and payment We will make for the Covered Services (emphasis added)*.

**THE RELEVANT CLAIMS**

There are two air ambulance claims' "Explanations of Benefits" (EOB) that were sent from Regence to Kirstin that are involved in this litigation. The EOBs indicate that the service provider, Memorial Herman Hospital Systems, was a Category 1 provider. The Court, however, believes this to be erroneous. The administrative record contains a "Task Note" which memorializes a telephone conversation between a Regence investigator and an employee with Blue Cross Blue Shield Texas (BCBSTX)[1] which indicates "that this ambulance company is not contracted with them." Based upon that entry, the Court finds that the air ambulance provider involved was a non-participating provider.

---

[1] BCBSTX was the "Host Plan" for the Texas geographical region and was responsible for providing provider contracting services and claim handling services on BCBSO's behalf.

The February 23, 2013, Claim

The total ambulance charges from Memorial Herman for the February 23, 2013, services were $5,625.00. Originally, on March 17, 2013, the EOB indicates that Regence identified and treated Memorial Herman as a Category 1 provider and determined that Kirstin had no responsibility for any unpaid balance and that her share of the claim was only $200.25. On May 12, 2013, Regence reprocessed the claim and, treating Memorial Herman as a Category 3 provider, determined Kirstin's responsibility to be $4,416.42; this reprocessed claim appears to be based upon one proper interpretation of the Plan. However, following inquiries from Kirstin, Regence again reprocessed the claim and on June 23, 2013, it determined Kirstin's responsibility to be $1,125.00; this calculation appears to have been done in accordance with the "Exceptions" provision of the Plan with Regence agreeing to pay the claim "based upon the provider's billed charge" and it, too, would be a proper discretionary interpretation of the Plan. Nevertheless, on July 7, 2013, Regence reprocessed the claim once again and determined Kirstin's share to be only the originally calculated $200.25. Frankly, the Court is at a loss as to how this reprocessing can be explained in accordance with the Plan since Regence paid in excess of its 80% share, however, it does not matter because this claim, while useful and instructive, is not in dispute.

The Disputed November 20, 2013, Claim

This air ambulance claim totaled $14,620.50. Although the EOB still identified Memorial Herman as a Category 1 provider, Regence paid the claim in accordance with the Plan's Category 3 non-participating provider provisions and determined Kirstin's responsibility to be $11,273.00.[2] Kirstin called Regence and requested that the claim be reviewed. During that review it was confirmed, as evidenced by the aforementioned "Task Note," that Memorial Herman's ambulance company was a non-participating provider and the claim had been correctly paid. Obviously, Regence declined, on this occasion, to treat the claim as an "Exception." Further complaints from Kirstin proved fruitless and Memorial Herman later billed her for the balance which she ultimately paid in full. This lawsuit soon followed.

**LEGAL STANDARDS**

This Court has previously found the Regence Plan to be covered by ERISA. Generally, a claimant who is denied benefits under an ERISA plan must exhaust all available administrative remedies afforded by a plan before filing suit for their recovery. Lacy v. Fulbright & Jaworski, 405 F.3d 254, 256 (5th Cir. 2005). Under certain circumstances, however, the failure to exhaust a plan's administrative remedies can be

---

[2] Plaintiff has not challenged the reasonableness of Regence's determinations of its "allowed amounts."

5

disregarded. One such exception has been raised in this case: non-compliance with the requirements of 29 C.F.R. § 2560.503-1(g).

A Court's review of a benefit determination by the plan administrator is under the abuse of discretion standard.[3] First, the Court must determine whether the administrator correctly interpreted the plan. In answering this question, the Court must consider (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan. Wildbur v. ARCO Chemical Co., 974 F.2d 631, 637-38 (5th Cir. 1992). Second, the Court must determine whether the administrator abused his discretion in handling the claim. "A plan administrator abuses its discretion if it acts 'arbitrarily or capriciously.'" Truitt v. Unum Life Insurance Co. of America, 729 F.3d 497, 508 (5th Cir. 2013) ("A decision is arbitrary and capricious only if it is 'made without a rational connection between the known facts and the decision or between the found facts and the decision.'") Id. "In addition to not being arbitrary and capricious the plan administrator's decision to deny benefits must be supported by substantial evidence." Anderson v. Cytec Industries, Inc., 619 F.3d 505, 512 (5th Cir. 2010).

---

[3] The Parties do not dispute that the proper standard in this case is abuse of discretion.

**ANALYSIS**

It is undisputed that Kirstin did not utilize the Plan's available levels of administrative appeals before suing Regence.  However, Kirstin now argues that she is deemed to have exhausted her administrative remedies because, *inter alia*, Regence failed to comply with the requirements of 29 C.F.R. § 2560.03-1(g).  That regulation required Regence to, *inter alia*, notify Kirstin of the specific reasons for any adverse determination to pay benefits by referencing the specific plan provisions relied upon in making the determination.

The EOB from Regence simply states "This service is not payable.  Refer to the specific Exclusions section in the member's benefits plan."  One problem with this non-specific notification is immediately apparent since, as Regence pointed out, it actually paid the "not payable" claim.  Another problem that is not readily apparent, but is equally non-specific, is that the referenced "Exclusions" section of the Plan offers absolutely no enlightenment on why the claim was so meagerly paid.  There is case law to support Kirstin's argument that a plan administrator's failure to comply with the regulatory requirements will result in a finding that a claimant shall be deemed to have exhausted the available administrative remedies.  See, Parton v. the United State Life Insurance Co. in the City of New York, No. 2:13-cv-203, 2014 WL 12531459 (N.D. Tex., Aug. 12, 2014).  See also, SunTrust Bank v. AETNA Life Insurance Co., 251 F.Supp. 2d 1282, 1289-90 (E.D. Va. 2003).  Moreover, Kirstin's arduous but successful verbal "exhaustion" of

Regence's administrative review of the earlier ambulance claim could have indicated to Kirstin that she could properly initiate the appeals process by her verbal inquiries, but Regence simply ignored her efforts, thereby rendering the procedures unavailable. In fact, there is no evidence in the record that Regence ever communicated to Kirstin the specific reasoning behind its determination of the disputed claim.

On the facts of this case, Kirstin makes a persuasive argument that Regence's procedural defense should fail. The Court, however, need not make that finding because even assuming Kirstin were deemed to have exhausted the available administrative remedies, the administrative record supports the conclusion that the plan administrator correctly interpreted the Plan in his determination of the claim.

Kirstin argues that the administrator has not given the Plan a uniform construction because of how the February air ambulance claim was paid. While the Court agrees that the evidence can be considered in deciding whether the administrator's plan interpretation was correct, see Denton v. First National Bank of Waco, Texas, 765 F.2d 1295 (5th Cir. 1985), the Plan itself gives the administrator the discretion to "over-pay" a non-participating provider when a claimant had no reasonable access to a participating one, as was the case with the emergency necessity of the February air ambulance service. But the exercise of that discretion to arguably "over-pay" a particular claim, does not result in the future relinquishment of that discretion as to any subsequent similar claim. Cf. Morse v. Stanley, 732 F.2d 1139, 1144 (2d Cir. 1984) ("Whether the Trustees had in the past

granted acceleration [lump sum benefits] to employees who requested it does not mean that they donned a discretionary straight-jacket which held them bound to grant acceleration in all cases as a matter of course.") Accordingly, the administrator's determination of the November claim is consistent with a fair reading of the Plan's discretionary "Exception" provisions; unfortunately, for Kristin, the plan administrator on this occasion exercised his discretion to not apply the exception. Moreover, Kirstin's straight-jacket proposition would result in substantial "unanticipated" costs to the Plan: Kirstin seeks to have the Plan absorb over $10,000.00 of an otherwise "not covered amount" of the November claim as compared to the $120.00 "over payment" of the February claim.

Having found that the record supports the administrator's treatment of Memorial Herman as a non-participating provider, the record also supports the determination of the November claim. As stated above, Kirstin has offered no evidence beyond speculative inference, that the administrator's determination of the reasonable amount payable for the claim was erroneous. Therefore, since the Court must accept that unchallenged determination by the administrator, it is clear that the claim was paid in accordance with the 80/20 split provided by the Plan and that Kirstin is also responsible for the remaining balance due Memorial Herman. Thus, the record evidence establishes that the administrator made one correct determination of the November claim. While his election to deny the claim an "Exception" status may seem callous, it cannot be found to be an abuse of discretion.

Having found that Regence made a proper determination of the November air ambulance claim, the Court need not address the potential liability, if any, of Blue Cross Blue Shield of Texas or Health Care Service Corporation.

In conclusion, the Court **FINDS** that the Kirstin's claim for additional benefits for the November 2013 air ambulance service is without merit and it is, therefore, **ORDERED** that "Plaintiff's First Amended Complaint" (Instrument no. 13) is **DISMISSED**.

**DONE** at Galveston, Texas, this _____16th_____ day of June, 2017.

_____
John R. Froeschner
United States Magistrate Judge